VIVIAN v. SAN ANTONIO, U. & G. R. CO.
(No. 5872.)

(Court of Civil Appeals of Texas. San Antonio. May 30, 1917. Rehearing Denied June 22, 1917.)

1. CARRIERS ⬅️303(2)—INJURIES TO PASSENGERS—ALIGHTING—INVITATION.

Where an infirm aged passenger had disclosed his destination to the trainmen, statement of one of them, "Well, we are here," was not an invitation for the passenger to alight while the train was moving.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1226.]

2. CARRIERS ⬅️303(8)—DUTIES TO PASSENGERS.

Partial blindness of a passenger does not require presence of an attendant to keep him from leaving the moving train, but only presence of assistance to alight when the train stopped.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1232.]

3. CARRIERS ⬅️298(1)—INJURIES TO PASSENGERS—NEGLIGENCE.

It is not negligence for a train to jerk or accelerate speed suddenly while approaching a station, since the railroad need not anticipate that passengers will stand on steps of a moving train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1205, 1206.]

4. CARRIERS ⬅️320(1)—INJURIES TO PASSENGERS—NEGLIGENCE—EVIDENCE.

Evidence in passenger's action for injuries held to warrant direction of verdict for carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1315, 1317.]

Appeal from District Court, La Salle County; J. F. Mullally, Judge.

Action by Lafayette Vivian against the San Antonio, Uvalde & Gulf Railroad Company. Judgment on directed verdict for defendant, and plaintiff appeals. Affirmed.

Magus Smith, of Pearsall, and Covey C. Thomas, of Cotulla, for appellant. Mason Williams and J. C. Hall, both of San Antonio, for appellee.

FLY, C. J. This is a second appeal of this case, the opinion on the former appeal being found in 180 S. W. 953. There is a full statement of the case therein, and it is unnecessary to repeat it here. After hearing the testimony offered for appellant, the court instructed a verdict for appellee.

The evidence showed that appellant, a man 66 years old, desiring to go from Gardendale to Crystal City, bought a ticket and got on the caboose of a freight train where the ticket was taken up by an employé of appellee. Before getting on the caboose, appellant asked a couple of men, who seemed to be loading something on or off the train, when the train would get to Crystal City, and they replied when the whistle blew. He stated he told them his sight was bad, and that he desired to get to Crystal City before night. He was told afterwards by another man to get aboard, which he did without assistance. He stated: "My condition was such that I could not see; I was partly blind at that time." Appellant stated that, when nearing Crystal City, a trainman came through the caboose and said, "Well, we have got here," and passed out the front end of the car, and appellant got up and passed out the rear end of the caboose. He got down on the lower steps, and as the caboose was nearing the depot appellant started to get off, when the train increased its speed, and he tried to recover his place on the step, but went off on his shoulder and was injured. It was dark when this happened. It was not shown that any employé of appellee saw appellant on the step or knew that he was trying to get off the moving train. He was not

told by any one to get off the train, nor was he informed that the train would stop for such a short time that he would be compelled to hurry off. His bad eyesight did not cause him to fall off the train, and appellee was under no obligation to have employés to assist appellant in leaving the train before the train stopped. He had no reason for believing that the train would not stop to let him off, and he knew that freight trains do not stop usually at passenger depots. He knew the train passed the passenger depot at Woodward before it stopped. He knew that the train was moving, and must have known the danger of trying to get off. He was trying to get off when he fell. He said: "When I say I aimed to step off, I mean I was trying to get off." Appellant lived at Gardendale, about 100 yards from the depot, and he went there on the day he was hurt unattended, and bought his ticket, and without difficulty worked his way into the caboose of a freight train. He was no novice in traveling on trains for he claimed to have "experience on cattle trains" as well as "experience on passenger trains." He knew it was a freight train, and knew their methods at stations. There is nothing to indicate that the man to whom appellant communicated the fact that his eyes were defective was an employé of the railroad or who got on the train. When he got to the caboose he testified: "I just shoved my way right on into the caboose and got a seat and sat down." Appellant knew the danger attendant upon getting off trains.

[1] It is claimed that appellee, knowing the condition of appellant's eyes, invited him to leave the train, and then failed to render him assistance in alighting from the car. All that appellant claims that the trainman said to him was, "Well, we are here." This cannot be tortured into an invitation to alight from the moving train, no more than the ordinary call of a brakeman for a station 200 or 300 yards from the depot would be an invitation for all passengers on board, bound for that station, to rush out and jump off the moving train. Every one who has had experience on trains, as appellant claims he has, knows that information that a place has been reached is made for some appreciable time before the train comes to a stop, in order that preparation may be made for a prompt exit when the stop is made, and that the call is not made to induce passengers to jump off the train while moving. Appellant was not deceived or misled by the words of the trainman; he knew it was night, he saw men on the platform and lights in the depot, and he knew that the train was moving, just as well as if his eyes had been young and perfect, and yet he attempted to get off the train while moving, and claims to have been thrown while attempting to regain his footing on the lower step. No necessity had been created by appellee for him to leave the train until it stopped as it did at or near all depots. There was no cause for him to

believe that he would not be given time to alight, if that could have excused his negligence and temerity in trying to get off a moving train. No one connected with the railroad knew that he was on the steps, for no one saw him get up and move to the rear of the car, and no one could anticipate that he would be so utterly regardless of his safety that he would attempt to alight while the train was moving. The increase of speed or jerk would not have hurt appellant had he been in any other position but that of alighting. The evidence fails to show any negligence on the part of appellee, but clearly shows gross negligence and an utter disregard of the rules of safety upon the part of an old experienced traveler. He was perfectly acquainted with the surroundings, having "gotten on trains lots of times there," and he tried to get off when the caboose "was about 20 or 30 steps more or less from the depot." He did not wait for the caboose to get in front of the depot, where it would evidently have stopped. It seems that appellant had before engaged in the hazardous act of getting off moving trains. His infirmity of sight emphasizes his negligence in endeavoring to leave a moving freight train at night. Appellant testified, "I am sort of like Sam Jones, my education has been badly neglected," but lack of education should not have rendered him imprudent and foolhardy. Perhaps he overestimated the activity and agility of a man approaching the limit of three score and ten years, and believed that he could, as he had before, leave a moving train with safety, but for his error in judgment he must suffer, and not the carrier.

[2] The partial blindness of appellant did not make it incumbent on appellee to have an employé to watch him and prevent him from leaving the caboose while it was moving, but could have demanded only that some one should be present to assist appellant, if necessary, to alight when the train stopped. Bad eyesight did not contribute to the disaster, but a lack of ordinary care upon the part of appellant.

[3] The only act that appellant could rely upon as negligence upon the part of appellee is that of accelerating the speed when near the depot, and that could not have been negligence, because appellee had no reason to anticipate that appellant would go down on the steps and hang on with one foot in the air in the act of alighting from a moving car. It was not alleged or proved that any one knew that appellant was on the step in the act of getting off. He should not have been there, and if he had stayed where he was, he would not have been hurt. He was not invited, nor was it hinted at that he should get off the car while it was moving. It is not pretended that the train would not have come to a complete stop and have afforded ample time for appellant to leave the car.

The only possible act of negligence, as before stated, shown by the evidence was that

of accelerating the speed of the train while appellant was getting off. It might not have been negligence per se for a half blind man, at night, to attempt to get off a moving train, but it could not be negligence in the railway company, in the absence of knowledge of the dangerous position occupied by its passenger, to increase the speed or jerk the car. However, as said in the case of Railway v. Highnote, 99 Tex. 23, 86 S. W. 923:

"He acted strictly upon his own judgment in so doing and the railroad company cannot be held liable for the results which flowed from such acts. The plaintiff by his own testimony was guilty of contributory negligence in the act of alighting from the train."

See, also, Railway v. Leslie, 57 Tex. 83, and Walker v. Railway, 151 S. W. 1142.

[4] The contributory negligence was uncontroverted, and there was no evidence of negligence upon the part of the railroad company. It was not error to instruct a verdict for appellee. Railway v. Rowland, 90 Tex. 365, 38 S. W. 756; Railway v. Wallace, 139 S. W. 1052.

The judgment is affirmed.